[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-15245
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2009
THOMAS K. KAHN
CLERK

Agency No. A097-385-363

MEI YA ZHANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 30, 2009)

Before BARKETT, WILSON and FAY, Circuit Judges.

PER CURIAM:

Mei Ya Zhang ("Zhang"), a native and citizen of China and the mother of

two children born in the United States, petitions *pro se* for review of the Board of Immigration Appeals's ("BIA") denial of her motion to reopen her removal proceedings. Zhang concedes that she moved to reopen almost three years after her removal order became final. Nonetheless, she argues that she was exempt from the 90-day filing deadline because she presented sufficient evidence of changed country conditions, particularly with respect to her likelihood of being sterilized under China's one-child family policy. After thorough review, we grant Zhang's petition for review and vacate and remand the cause for further proceedings.

I.

Zhang is a native and citizen of Changle City, Fujian Province, China, who illegally entered the United States on July 8, 2003. After she was charged with inadmissibility and issued a Notice to Appear, Zhang applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Following an April 13, 2004 hearing, the Immigration Judge ("IJ") denied Zhang's application, which decision she appealed to the BIA. On July 28, 2005, the BIA issued a final order adopting and affirming the IJ's decision and dismissing Zhang's appeal. Zhang moved the BIA to reopen on April 7, 2008; the BIA denied the motion in a final order dated August 18, 2008.

In moving to reopen, Zhang claimed that she had married (her husband is also a native and citizen of Fujian Province) and given birth to two daughters in the

2

United States (one born in October 2005 and one born in November 2007), and had also converted to Christianity. Zhang asserted that she feared being sterilized and losing her freedom of religion if she returned to China. Specifically, Zhang claimed that the birth of her two daughters violated China's one-child family planning policy and could lead her to forced sterilization upon return to China, and that she would be forced to have an abortion if she became pregnant in the future. Zhang thus argued that her changed circumstances were sufficient to support the filling of a successive asylum application, but also acknowledged that a motion to reopen must be based on changed country conditions if not filed within 90 days of the BIA's final order.

In support of her motion, Zhang submitted an affidavit stating that since the conclusion of her prior case, she had married and given birth to two children. Zhang claimed that her mother had been forcibly sterilized in China for giving birth to two children, that Zhang's father had been granted asylum in the United States in 2006 because of her mother's sterilization, and that Zhang would also be sterilized if forced to return. Zhang also submitted a document purportedly issued by the Hangcheng Town Shirong Village Resident's Committee for Changle City ("the Village Committee Letter"), dated July 26, 2007, which stated that Chinese citizens who have two children born abroad are subject to mandatory sterilization upon return to China.

3

Zhang also offered various documents about her personal circumstances, which verified her marriage, baptism, church attendance, and children's births. Also included were documents relating to China's family planning policies and its treatment of Christians, including (1) various administrative decisions from the Changle City Family Planning Board from 2003; (2) a question and answer form from the Changle City Family Planning Information Handbook from 1999; (3) a newspaper article from 2002 about abortions and sterilizations of individuals returning from Taiwan; (4) information published before 2001 about China's family planning policies, including various directives, notices, and regulations; (5) a December 27, 2005 Directive from the Lianjiang County Guantou Township Committee ("the Directive"); and (6) various internet and newspaper articles about China's treatment of Christians. The record also includes the U.S. Department of State's 2003 Country Report on Human Rights Practices in China, as well as the Department of State's 1998 Profile of Asylum Claims and Country Conditions in China.

Because Zhang concedes that she cannot file a successive asylum application absent a successful motion to reopen, does not contend that she should have received a favorable exercise of the BIA's discretion, and does not address the claim raised before the BIA that she would be persecuted because of her Christian faith, she has abandoned these issues. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d

4

1226, 1228 n.2 (11th Cir. 2005) (per curiam) (citations omitted). Thus, the only issue before us is Zhang's allegation of changed country conditions with respect to the one-child policy and the birth of her two children.

## II.

"We review the [BIA's] denial of a motion to reopen removal proceedings for abuse of discretion." *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007) (per curiam). This review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner. *Abdi v. U.S. Att'y Gen.*, 430 F.3d 1148, 1148 (11th Cir. 2005) (per curiam). The moving party bears a heavy burden, *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 813 (11th Cir. 2006) (per curiam), as motions to reopen are disfavored, especially in removal proceedings, *INS v. Doherty*, 502 U.S. 314, 323, 112 S. Ct. 719, 724, 116 L.Ed.2d 823 (1992). Here, we review only the BIA's decision because the BIA did not expressly adopt the IJ's opinion or reasoning. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1301-02 (11th Cir. 2001).

Concluding that Zhang's evidence failed to show a material change in China's existing family planning policies that had been in existence for nearly 30 years, the BIA reasoned that Zhang's statement about her mother's situation was unsubstantiated and not evidence of changed country conditions, and that the letter from Zhang's village was incredible because Zhang did not specifically reference it

5

in her statement and the document was unauthenticated. Thus, the BIA concluded that Zhang was barred from filing a successive asylum application following a final removal order and that the circumstances did not warrant an exercise of the BIA's limited discretion to reopen the proceedings.

An alien who is subject to a final order of removal and wishes to reopen the proceedings must move to reopen within 90 days of the date on which the removal order became final. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). Nevertheless, the time limit is inapplicable if the alien can demonstrate "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see* 8 C.F.R. § 1003.2(c)(3)(ii). An alien cannot circumvent the requirement of changed country conditions by demonstrating only a change in her personal circumstances. *See Chen v. U.S. Att'y Gen.*, __ F.3d __, Case No. 08-10259, manuscript op. at 9-10 (11th Cir. Apr. 13, 2009) (per curiam).

To qualify for asylum, the applicant must establish that she has a well-founded fear that she will be persecuted if removed to her home country. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1), 1231(b)(3). The Immigration and Nationality Act expressly recognizes forced abortions and sterilizations as one such kind of persecution:

6

a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(B). Zhang concedes that she moved to reopen late, but contends that she presented sufficient evidence of changed country conditions. We agree.

Contrary to the BIA's conclusion, Zhang's claim is not principally based on changed personal circumstances due to the birth of her two children; rather, Zhang's petition was based on the enforcement of the one-child policy in Fujian Province and her fear that she too would face persecution in the form of forced sterilization if removed to China. The BIA discounted Zhang's personal statement about her mother's sterilization as "unsubstantiated" and "anecdotal," yet the BIA failed to explain how the record evidence concerning China's family planning policy is in any way inconsistent with Zhang's statement. Further, the BIA discounted the Village Committee Letter based on authenticity, but failed to consider whether it did indeed indicate changed circumstances since the removal proceeding in light of the other record evidence presented by Zhang. *See Lin v. Mukasey*, 532 F.3d 596, 597 (7th Cir. 2008) (letter from Villager Committee of

7

Changle City indicated changed circumstances since the petitioner's removal proceeding; the government did not doubt the letter's authenticity).

Even if the BIA properly discounted the Village Committee Letter and averments in Zhang's personal statement, the BIA's decision overlooked, or inexplicably discounted, the other record evidence that corroborates Zhang's claim. *See Jiang v. U.S. Att'y Gen.*, __ F.3d __, No. 08-14871, manuscript op. at 12-13 (11th Cir. May 22, 2009) (concluding that the BIA's decision overlooked evidence that unambiguously corroborated incidents of coerced sterilization); *Li*, 488 F.3d at 1376. Specifically, the BIA entirely ignored the December 27, 2005 Directive, which states that couples who violate the policy will be fined, that women of reproductive age who are "outside the plan" shall be inserted with an Intrauterine Device if not pregnant, shall undergo an abortion if pregnant, and that "[o]ne party of the couple shall be sterilized if the nature of the violation is very serious." (R. 99-100). The Directive is dated December 27, 2005 and states that the revised regulation was effective January 1, 2006, after the birth of Zhang's two children. In light of the Department of State Reports on China and other record evidence that the BIA failed to address, the Directive appears to show that China's one-child policy is enforced more stringently now than when Zhang was ordered removed.

Thus, we conclude that the BIA did not give appropriate consideration to Zhang's evidence. We GRANT Zhang's petition, VACATE the BIA's order, and

direct the BIA to reopen proceedings so that it may consider the merits of Zhang's

claims for asylum and withholding of removal.

**PETITION GRANTED.**